## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **VILLAGE IN ROANOKE, L.P.** | ) | **CHAPTER 11** |
| | ) | |
| Debtor. | ) | **CASE NO. 09-72431** |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **SHENANDOAH, L.P.** | ) | **CHAPTER 11** |
| | ) | |
| Debtor. | ) | **CASE NO. 09-72443** |

## MEMORANDUM DECISION

These Debtors, Village in Roanoke, L.P. and Shenandoah, L.P., designate themselves as being and appear to be "Single Asset Real Estate" debtors within the definition appearing at 11 U.S.C. § 101 (51B). Each owns an apartment complex for which substantial secured financing has been provided by Federal National Mortgage Association, commonly referred to as "Fannie Mae." Indeed Fannie Mae is the only secured creditor either of them has scheduled in its petition. Both Debtors are under common management and their respective apartment complexes are adjacent to each other and themselves are commonly managed. The Court is advised that cross-easements exist for the common use of certain facilities by tenants of either complex for a swimming pool located on Village's property and a clubhouse on Shenandoah's property. The Court is further advised that Fannie Mae was attempting to foreclose on both complexes at the time the Debtors made their filings in this Court, Village on September 25, 2009 and Shenandoah three days later on September 28. Since that time the Debtors have continued to operate and manage their respective complexes under the terms of

detailed consensual orders providing for the use of Fannie Mae's cash collateral. The most recent of those orders expired as to both Debtors on January 31, 2010. At the Court's invitation and request the parties have been attempting since a hearing on January 25 to negotiate their differences in the hopes of being able to present consensual plans of reorganization. At a telephone hearing on February 1, 2010 counsel for the parties advised the Court that their efforts had been unsuccessful. The Debtors, conceding that the existing plans they have filed are non-confirmable in the face of Fannie Mae's opposition, have requested thirty days to file amended plans and disclosure statements. Counsel for Fannie Mae opposes that request on the ground essentially that there is no reasonable prospect that the Debtors can file plans which can be confirmed.

In its Schedule A, Village represents that its real property has a value of $3,837,623.00 with no secured debt. However, Schedule D shows property with a value of $3,847,584.64[1] is encumbered by a lien securing indebtedness to Fannie Mae in the amount of $1,541,556.00. Its personal property listed on Schedule B is valued at $50,526.44. It also schedules no priority unsecured indebtedness and $167,706.75 of general unsecured debt owed to 38 creditors. The comparable numbers for Shenandoah are real property with a value of $3,965,465.00 which is encumbered by a lien securing indebtedness to Fannie Mae in the amount of $1,672,466.04. Its personal property listed on Schedule B is valued at $52,070.11. It also schedules no priority unsecured indebtedness and $631,710.81 of general unsecured debt

---

[1] The property in Schedule A is described as "Residential Rental Property located at 29th Street, N.W. Roanoke, VA 24017." The property in Schedule D is described as "New Lot 3-A1, containing 8.234 acres, Roanoke City, VA TMP 2420207." Although the Court is not certain as to the reason for these discrepancies in identification and valuation, they do not have any impact on the decision of the Court in this matter.

owed to approximately 54 creditors. Since the dates of their respective filings in this Court, neither Debtor has paid any interest or other consideration to Fannie Mae and none of either's partners or financial backers has paid anything of that nature for them. While Fannie Mae appears determined to foreclose on both properties, it does not wish to disturb the tenants in either complex or to force their immediate shutdowns. Further, while it is not amenable to continuation of the Debtors' ownership and management of the projects, it has made no complaint about either Debtor's handling of and accounting for its cash collateral during the course so far of these proceedings. The Court has been given no reason to suspect that, other than any injury resulting from continued accrual of unpaid interest and the existence of the automatic stay preventing its desired course of foreclosure, Fannie Mae's collateral position has been further impaired or compromised in any manner under the terms of the agreed cash collateral orders.

The matters now before the Court are the suitability of the Debtors' Disclosure Statements and their motions for the continued use of cash collateral. In addition status hearings were scheduled in both cases on the same hearing date of January 25. Although counsel for Fannie Mae has made reference to the provisions of 11 U.S.C. § 362(d)(3) and the admitted fact that it has not been receiving any interest on its loans while these cases have been pending, it has not yet filed a motion for relief from the automatic stay in either case. Neither has it or any other party in interest filed a motion to dismiss either case or convert either one to chapter 7 pursuant to 11 U.S.C. § 1112.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Consideration of Chapter 11 plan Disclosure Statements and orders respecting the use of cash collateral are "core" bankruptcy matters pursuant to 28 U.S.C. § 157(b)(2)(L) and (M), respectively.

       The options available to the Court in the present circumstances of these cases are actually quite limited. Although Fannie Mae may well have cause to obtain relief from the automatic stay, § 362(d) of the Code does not authorize the Court to grant such relief except "[o]n request of a party in interest and after notice and a hearing . . ." Furthermore, in a chapter 11 case, Bankruptcy Rule 4001(a) requires that notice of such a request be given to any appointed committee of unsecured creditors, or if none, the holders of the twenty largest unsecured claims. At this point that has not occurred. Similarly, 11 U.S.C. § 1112(b) does not authorize a bankruptcy court to dismiss or convert a Chapter 11 case except "on request of a party in interest, and after notice and a hearing[.]" As previously noted, at this time there is no motion to convert or dismiss the case. The Debtors have conceded that the reorganization plans presently before the Court are not confirmable. Accordingly, any consideration of the Disclosure Statements filed with them is moot. Although Fannie Mae no longer consents to the Debtors' use of its cash collateral pursuant to § 363(c)(2) of the Code, the Court does have the authority to authorize such continued use "in accordance with the provisions of this section [§ 363]." Although counsel for Fannie Mae has mentioned the possibility of the appointment of a receiver for the projects until their foreclosure can be effected, there has been no suggestion that the Debtors have in any manner abused their continued use of cash collateral during these proceedings to continue the normal day-to-day operations of the two complexes. In short, the

problem is not that funds are being drained from the projects for the benefit of the Debtors or their principals, but simply that they are not currently producing enough income to both pay their operating expenses and their debt service obligations.

Under the circumstances presented here, the Court concludes that the proper resolution of the matters now before it is to grant the Debtors and each of them leave to file within twenty-one days from the date of entry of the order effectuating this decision amended plans and related disclosure statements, and to authorize them to continue to collect and use cash collateral until further order of this Court, or the expiration of such twenty-one day period without any such amended plan and disclosure statement for such Debtor being filed, to defray the normal and routine day-to-day operating expenses of the two projects under the same terms and conditions as have been in effect under the agreed cash collateral orders heretofore in effect, but that such authorizations shall be without prejudice to the filing by Fannie Mae or any other party in interest, as may be applicable, any motions seeking modification of the automatic stay or the dismissal of these cases or their conversion to chapter 7. An order to such effect shall be entered contemporaneously with the signing of this Decision.

This 2nd day of February, 2010.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE