IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VILLAGE IN ROANOKE, L.P., | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | CASE NO. 09-72431 |

| | | |
|---|---|---|
| | ) | |
| FEDERAL NATIONAL | ) | |
| MORTGAGE ASSOCIATION, | ) | |
| | ) | MOTION FOR RELIEF |
| Movant | ) | FROM AUTOMATIC STAY |
| | ) | |
| v. | ) | |
| | ) | |
| VILLAGE IN ROANOKE, L.P., | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM DECISION ON MOTION FOR RELIEF

The matter before the Court is the Motion of Federal National Mortgage Association ("Fannie Mae") for Relief from Automatic Stay (the "Motion")[1] pursuant to 11 U.S.C. §§ 362(d)(2) and (d)(3). Following a hearing held before the Court on April 14, 2010, the Court took Fannie Mae's Motion under advisement to allow the Debtor fifteen days to file a written response, after which Fannie Mae was to have seven additional days to reply.[2] Also before the Court at that hearing was consideration of the adequacy of the Debtor's First Amended Disclosure Statement (the "Amended Disclosure Statement"), to which Fannie Mae

---

[1] Fannie Mae supplemented its Motion on April 12, 2010 to include information obtained by an appraisal of the real estate which is the subject of the matter before the Court. For purposes of the Court's decision the original motion and supplement are referred to as the consolidated "Motion."

[2] Fannie Mae's deadline to reply was later extended to eight days by agreement.

has objected on various grounds and which the Court also took under advisement at such hearing. The Court will deal separately with that matter. With the parties having now filed their respective memoranda and considering the contentions raised, the Court for the reasons noted below will grant Fannie Mae's Motion pursuant to § 362(d)(2) by conditioning the continuance of the automatic stay upon the Debtor obtaining confirmation of its Amended Plan by July 15, 2010.[3]

## FINDINGS OF FACT

The Debtor initiated its bankruptcy proceeding in this Court by filing a Chapter 11 voluntary petition on September 25, 2009.[4] In its petition the Debtor represented that its business is "Single Asset Real Estate" as that term is defined in 11 U.S.C. § 101 (51B).[5] Indeed, the

Debtor listed only one real property asset in Schedule A, the property which is the subject of the

---

[3] The Debtor originally filed an amended plan styled as "Village in Roanoke, L.P.'s Amended Plan of Reorganization and Disclosure Statement, Dated February 23, 2010" on February 23, 2010. This pleading was amended with a second amended plan styled as "Village in Roanoke, L.P.'s Second Amended Plan of Reorganization, Dated March 1, 2010" which was docketed on March 4, 2010. For purposes of this decision "Amended Plan" refers to the Second Amended Plan docketed on March 4, 2010.

[4] The Debtor amended its petition on October 26, 2009 to clarify that it was not a small business debtor as it had originally stated in the initial petition.

[5] As set forth in this section of the Bankruptcy Code:
> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer that 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

11 U.S.C. § 101(51B).

Motion now before the Court. This real estate is a fifty-four unit multifamily residential apartment complex located in Roanoke, Virginia which is managed by a separate entity. According to pleadings filed with the Court, the property is operated in accordance with the provisions of Section 42 of the Internal Revenue Code[6] and is subject to a regulatory agreement with the Virginia Housing Development Authority and certain restrictive covenants including a restriction on the amount of rent that can be charged based on a percentage of the median income in the region.

In addition to the real estate asset disclosed on Schedule A, the Debtor scheduled on Schedule B personal property assets of petty cash, a checking account, security deposits, accounts receivable, mortgage escrow deposits, a reserve for replacements, prepaid insurance, and prepaid expenses, all totaling approximately fifty thousand dollars. In Schedule D the Debtor listed Fannie Mae's secured claim, which is the Debtor's only secured claim, in a total amount of $1,541,556, all of which was shown to be secured by real property having a value of $3,847,584.64. In Schedule F the Debtor scheduled several unsecured claims totaling $167,706.75, the largest two being "advances" from Heritage Affordable Development listed as $37,200 and a "developer fee" due to RVHC, LLC in the amount of $79,880.66. In Schedule G the Debtor identified twenty-five unexpired residential leases for tenants in the apartment complex and the management agreement with the Debtor's current property manager, Winterwood, Inc. As is evident from Schedules E and H, the Debtor has no unsecured priority claims and no co-debtors on any of its obligations.

---

[6] This Section of the Internal Revenue Code is captioned as "Low-income housing credit." 26 U.S.C. § 42. The Court is advised by the parties that one of the primary advantages for such a real estate business operation is the tax credit afforded to the property owner.

As represented by the Debtor in pleadings filed with the Court, this bankruptcy proceeding was the result of complications the Debtor began experiencing in 2008 including criminal activity, delinquency in rent payment, and the failure of the prior management company to keep the apartment units in suitable condition. In 2009 the Debtor replaced its management company and retained a security company. The Debtor was nevertheless unable to continue meeting its obligation to Fannie Mae. As disclosed in Schedule G, apparently only twenty-five of the fifty-four apartments were leased as of October 22, 2010. The Court was advised by the parties at a prior hearing that Fannie Mae was attempting to foreclose on the real estate prior to the filing of the petition.

Fannie Mae has provided significant financing for the real estate. Fannie's Mae's Proof of Claim filed on January 25, 2010 represented a secured claim of $2,039,837.19. Based on the Movant's Certification form filed on February 23, 2010 with respect to the Motion before the Court, the unpaid principal as of the petition date was $1,532,827.11. Although the Debtor initially scheduled the value of the real estate as $3,837,623, which would represent a significant equity cushion, as of the hearing held on April 14, 2010, the parties stipulated to a value of $1,000,000 for purposes of the Motion before the Court. The practical effect of this is that the parties are agreed that Fannie Mae has both a $1,000,000 secured claim and an unsecured claim in an amount exceeding $500,000.

Until the filing of the Amended Plan, the Debtor had been proceeding in bankruptcy with a related debtor, Shenandoah, L.P. ("Shenandoah"). Shenandoah filed a Chapter 11 voluntary petition three days after the Debtor. Like the Debtor, Shenandoah's only real estate asset is a residential multifamily apartment complex with Shenandoah having seventy

apartment units as compared to the Debtor's fifty-four.  As in the Debtor's case, Fannie Mae was also the only secured creditor in Shenandoah's case and Fannie Mae had likewise provided significant financing for Shenandoah's real estate.  The Court was advised at a prior hearing that the Debtor's property and Shenandoah's adjoin one another and cross-easements exist for the common use of certain facilities by tenants of either complex for a swimming pool located on the Debtor's property and a clubhouse on Shenandoah's.  Although both Debtors had initially proceeded with the same course of action by filing proposed consensual plans of reorganization,[7] Shenandoah consented to relief from the automatic stay being granted to Fannie Mae by means of an agreed Order to such effect on March 22, 2010.

       In the Debtor's first plan of reorganization filed on December 4, 2009, the Debtor proposed reorganizing with a capital infusion to be made by its general partner and limited partner in the total amount of $115,000.  The capital infusion would be used "to upgrade now vacant units and make them rent ready."  (Village in Roanoke, L.P.'s Plan of Reorganization and Disclosure Statement, Dated December 4, 2009, at pg. 1.)  As for the treatment of its creditors, in "Class 2" the Debtor proposed to pay 100% of Fannie Mae's claim but at a reduced interest rate of 6.5% as compared to the 7% rate provided in the original note.  However, the Debtor proposed to defer payments of principal and interest to Fannie Mae for a period not to exceed two years, thereby extending the maturity date on the note.  The Debtor did provide that any monthly cash flow exceeding ordinary business and administrative expenses during the two year deferment period would be paid to Fannie Mae though.  With respect to unsecured creditors, the

---

[7] A "consensual" plan of reorganization is one that would comply with the requirements of 11 U.S.C. § 1129(a)(8), which mandates that each class of impaired claims accept the plan.

Debtor proposed to pay all unsecured claims in "Class 3" in full on a pro-rata basis commencing no later than January 2, 2012 as "funds [were] made available." *Id.* at 3.  Finally, the Debtor provided for two additional classes of claims:  "Class 4" comprising disputed unsecured claims which the Debtor represented it would challenge if any such claim were filed.  "Class 5" comprised "allowed unsecured claims of equity security holders (insiders) of Village in Roanoke," which would receive full payment "[a]fter all other classes [were] provided for under the Plan and as the funds are made available." *Id.* at 3.

After the filing of the first proposed plan, a hearing was held on January 25, 2010 to consider the Debtor's first disclosure statement.  Fannie Mae had filed an objection to this disclosure statement on January 18, 2010, in which it stated, among other things, that it would not accept the Debtor's first proposed plan and accordingly, since the disclosure statement related to a plan which could not be confirmed on its face due to Fannie Mae's anticipated rejection, the disclosure statement could not be approved.  At the hearing the Court agreed to allow the matter to be continued so the parties could attempt to negotiate and possibly reach an agreement to present a consensual plan of reorganization.  However, the Court was advised during a telephone conference on February 1, 2010 that the parties had been unsuccessful.  During this conference counsel for the Debtor conceded that both the Debtor's plan and Shenandoah's plan could not be confirmed in light of Fannie Mae's opposition.  Counsel thereafter sought permission to amend the plan and disclosure statement in both the Debtor's and Shenandoah's cases within thirty days, which request Fannie Mae opposed on the basis that there was no reasonable prospect that a plan could be proposed which could be confirmed.  However, observing that Fannie Mae had neither filed a motion to dismiss or convert the cases to Chapter 7

nor a motion for relief from the automatic stay, the Court granted the Debtors twenty-one days in which to file amended plans and related disclosure statements. The Court's decision was entered without prejudice to Fannie Mae's or any other party in interest's right to file a motion seeking modification of the stay or the dismissal or conversion of the case to Chapter 7.

Fannie Mae filed the Motion presently before the Court a few days later on February 12, 2010 following entry of the Court's Order. The Debtor filed its first amended plan, which was further amended on March 4 to separate the disclosure statement and plan into separate documents. Shenandoah did not file an amended plan in its case. On March 8 the parties in this case reappeared before the Court for the hearing on Fannie Mae's Motion but sought to continue the Motion so that it would be heard on the same date as the Amended Disclosure Statement. On April 14 the parties reappeared for that hearing at which time the Court took the matter under advisement following argument from Fannie Mae's counsel.

In the Amended Plan and Amended Disclosure Statement the Debtor proposes, as it had in the first plan, for its general partner and limited partner to make a capital cash infusion of $115,000, noting that each will contribute half of the total amount. As opposed to the first plan, however, the Debtor states that it "intends to pursue non-consensual confirmation of [its Amended] Plan pursuant to 11 U.S.C. § 1129(b)." (Village in Roanoke, L.P.'s Second Amended Plan of Reorganization at pg. 1.) The Debtor proposes to pay Fannie Mae's secured claim in "Class 2" based on the "full value" of its claim which amount is based on the actual value of the real estate. The Debtor estimated the real estate value to be $700,000 as noted in the Amended Plan but as previously referenced, the parties agreed to and have stipulated a value of $1,000,000 for the real estate. Once confirmed, the Debtor would commence payments of interest and

principal to Fannie Mae in the amount of $4,657.12 although this amount would have to be increased to amortize the now stipulated secured claim of one million dollars.  In "Class 3" the Debtor proposes to pay unsecured creditors in full on a pro rata basis with any excess funds after the payment of administrative and ordinary expenses and after the payment of principal and interest to Fannie Mae.  The Debtor proposes to commence these payments to unsecured creditors on September 1, 2010 and to make such payments on a six month recurring schedule until paid in full, but without any provision for interest.  Finally, as it had done in its originally proposed plan, the Debtor provided for disputed unsecured claims in "Class 4" and to treat such claims as it had originally proposed in the first plan.  The Debtor likewise provided in "Class 5" for "allowed unsecured claims of equity security holders (insiders) of Village in Roanoke," and proposed the same treatment as it originally had in the first plan.  *Id*. at 3.

Fannie Mae objected to the Debtor's Amended Disclosure Statement as it had to the first one.  In its Objection, Fannie Mae contends that it is not possible to approve the Amended Disclosure Statement because the Amended Plan is non-confirmable on its face as no impaired class will vote to accept it as is necessary under 11 U.S.C. § 1129(a)(10).  Fannie Mae contends that its unsecured deficiency claim will control "Class 3" and because "Class 2" and "Class 3" are the only classes entitled to vote, it can block confirmation of a nonconsensual plan.  Fannie Mae highlights that "Class 4" is deemed to reject as there is no provision for payment to disputed unsecured claims, and "Class 5" has no vote because those "claims" are insider interests.  Accordingly, Fannie Mae contends that the under § 1129(b) the Debtor cannot confirm its proposed nonconsensual plan of reorganization.

In the Motion now before the Court, Fannie Mae contends that relief is warranted

8

pursuant to §§ 362(d)(2) and (d)(3) of the Bankruptcy Code. Fannie Mae devotes a significant portion of its Motion to arguing the latter section's applicability and that relief is warranted because this case is more than ninety days past the date of the petition filing and, as Fannie Mae contends, the Debtor has neither begun making monthly interest payments in an amount equal to the nondefault contract rate of interest nor filed a confirmable plan. At the time of the filing of the Motion, the Debtor had not yet proposed its Amended Plan. However, relying on the arguments made in the objection to the Amended Disclosure Statement, counsel asserted at the April 14 hearing that the Court is still faced with a plan of reorganization that is not confirmable on its face. Fannie Mae's second argument is that relief is warranted under § 362(d)(2) because there is no equity in the Debtor's real estate and because, Fannie Mae asserts, there is no plan of reorganization before the Court that has a reasonable possibility of confirmation within a reasonable time. Therefore, the Debtor cannot meet its burden to show that a reorganization is in prospect. Finally, Fannie Mae requests in its Motion that the Court waive the fourteen day stay imposed by Bankruptcy Rule 4001(a)(3) so that it may immediately proceed to enforce its rights in the Debtor's real estate. Fannie Mae has not made any assertion, as ground for granting its Motion, that the Debtor is mismanaging the apartment property or has failed to insure it or otherwise is allowing waste to occur which is imperiling the value of its collateral.

    Although Fannie Mae, by counsel, has asserted that it will vote against confirmation of the Debtor's Amended Plan irrespective of its provisions and therefore that no plan is in prospect which has a reasonable chance of being confirmed within a reasonable period of time, it has not offered any witness or other evidence to support such assertion or to explain its rationale for such position. It has stated in its Objection to the Debtor's Amended Disclosure

9

Statement, however, that it rejects the Amended Plan.

In response to Fannie Mae's Motion following the April 14 hearing, the Debtor asserts four arguments. First, the Debtor contends that the standard employed at a relief hearing is lower than that of confirmation. If the Court does not find that the proposed plan before it can be confirmed, the Debtor contends that the Court should simply allow the Debtor to amend its plan rather than grant relief. Second, the Debtor contends that the standard of whether property is necessary for an effective reorganization is case specific and the question for the Court's analysis is whether the Debtor can accomplish what it proposes. Third, the Debtor contends that it could proceed in one of two ways to overcome Fannie Mae's objection concerning § 1129(a)(10). The Debtor contends it could distinguish Fannie Mae's deficiency claim based on its non-recourse rights under a Chapter 7 proceeding as compared to other unsecured creditors' natural recourse rights. Alternatively, the Debtor contends that it could clarify the classification of whether claims were in fact impaired. The Debtor contends that since all claimants are to be paid 100%, they are not truly impaired. Finally, the Debtor contends that case law supports denial of relief. The Debtor contends that courts frequently deny relief where a plan proposes a repayment of claims in full and significant equity injections from partners, much like Debtor's proposed reorganization here. The Debtor therefore contends that dismissal of the Motion is warranted, or alternatively, requests that it be allowed to amend its plan if the Court doesn't find the currently proposed plan as confirmable.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Motions to terminate, annul, or modify the automatic stay are "core" bankruptcy matters pursuant to 28 U.S.C. § 157(b)(2)(G).

Fannie Mae asserts that it is entitled to be granted relief from the automatic stay upon two grounds. The first is based on a special provision applicable only to "single asset real estate"[8] bankruptcy cases pursuant to 11 U.S.C. § 362(d)(3), which mandates relief from the stay if the debtor in such a case fails within ninety days of the entry of the order for relief to file a "plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time"[9] or to commence making payments to the mortgagee "in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate."[10] For the reasons noted below, the Court concludes that relief is not justified upon this ground. The second ground put forward for relief is under 11 U.S.C. § 362(d)(2), applicable to all bankruptcy cases, which requires that relief be granted as to property of the estate if the debtor does not "have an equity in such property"[11] and "such property is not necessary to an effective reorganization."[12] The Bankruptcy Code provides that in any motion for relief under § 362(d) the party seeking relief from the stay has the burden of proof on the issue of "the debtor's equity in the property" but that the party opposing relief "has the burden of proof on all other

---

[8] For the Bankruptcy Code's definition of this term, see footnote # 5, *supra*.

[9] 11 U.S.C. § 362(d)(3)(A).

[10] 11 U.S.C. § 362(d)(3)(B).

[11] 11 U.S.C. § 362(d)(2)(A).

[12] 11 U.S.C. § 362(d)(2)(B).

issues." 11 U.S.C. § 362(g). On the basis of controlling precedent and the evidence now before the Court, both of which are reviewed below, the Court concludes that Fannie Mae is entitled to relief pursuant to § 362(d)(2) in the nature of conditioning the continuation of the stay upon the Debtor's ability to obtain confirmation of its Amended Plan by July 15, 2010, in default of which the automatic stay will be terminated.

        A.        11 U.S.C. § 362(d)(3) (Single Real Estate Asset provision)

The Debtor readily acknowledges that it has not commenced monthly payments of interest as contemplated by § 362(d)(3)(B) and therefore it has no basis to block relief to the Movant on this provision. It does assert, however, that it did file a plan within ninety days of the commencement of the case which had "a reasonable possibility of being confirmed within a reasonable time." § 362(d)(3)(B). It further points out that its initial intention was to propose a plan which would lead to a consensual confirmation. While the Movant concedes that the Debtor did file a plan within the required ninety day time period, it contends that such plan did not have a reasonable chance of being confirmed because Fannie Mae was unalterably opposed to confirmation of such plan. The provisions of the Debtor's initially proposed plan have been already noted. Particularly noteworthy among its provisions were (1) a commitment to pay all unsecured creditors, including the unsecured portion of the mortgagee's claim, in full, and (2) an offer on behalf of the Debtor's owners to inject into the partnership new capital for the purpose of rehabilitating the sub-standard apartments to make them suitable for ready rental.

Although Fannie Mae has been very consistent in its statements by counsel to the Court that it is unwilling to support the Debtor's efforts to reorganize, it has been much more reticent to explain its rationale for its seemingly intractable position, perhaps because it may feel

that it has no need to do so.  Nevertheless, the Court has found nothing unreasonable about such plan or about the Debtor's expectation that it could be confirmed with the support of the creditors, including Fannie Mae.  The fact that Fannie Mae was unwilling to support such plan does not justify the conclusion that it had no reasonable possibility of confirmation at the time it was proposed.  Other courts have observed that the apparent purpose of § 362(d)(3) is to expedite early consideration of single asset real estate cases and to provide relief to the mortgagee from the stay when the mortgagor debtor takes refuge in the bankruptcy court without filing a plan with reasonable promptness or beginning to make regular reasonable payments to the mortgagee.  See, *e.g.*, *In re Hope Plantation Group, LLC*, 393 B.R. 98, 101 (Bankr. D.S.C. 2007); *In re Archway Apartments, Ltd.*, 206 B.R. 463, 465 (Bankr. M.D. Tenn. 1997).  This Court is satisfied that the initial plan was filed in good faith and with a reasonable expectation on the Debtor's part that it could be confirmed within a reasonable time.  In short, what is important is not the reaction of the mortgagee to the plan, but whether the plan which has been filed strikes the Court as one which is reasonable and has a reasonable possibility of obtaining confirmation.  Accordingly, it concludes that Fannie Mae is not entitled to relief pursuant to § 362(d)(3).

        B.          11 U.S.C. § 362(d)(2) (Generally applicable cause for relief)

As already noted, § 362(d)(2) mandates that relief from the automatic stay be granted when two conditions have been met:  absence of equity and lack of necessity of the property for a successful reorganization.  The parties have stipulated that the value of the real estate collateral for Fannie Mae's loan is $1,000,000.  They further are in agreement that the amount owed to the Movant considerably exceeds that value.  Accordingly, it is clear beyond any question that there is no equity owned by the Debtor in the apartment complex.  That being

the case, the only remaining question is whether the "property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(B).  As already noted, the Debtor as the party opposing relief bears the burden of proof on this issue.  While just applying the words of the statute would seem to invite the obvious conclusion that in a single asset real estate case such "single asset" will be absolutely necessary for any reorganization by its debtor owner because without it there is nothing of consequence to reorganize or rehabilitate, the Debtor, by counsel, acknowledges the judicial gloss which has been placed on these words to the effect that they mean property which is necessary for a successful reorganization pursuant to a plan which has a realistic chance of being confirmed within a reasonable time.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376 (1988); *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Associates*, 987 F.2d 154, 157 (3d Cir. 1993), *reh'g denied en banc*, 987 F.2d 154 (3d Cir. 1993); *In re Fairfield Executive Associates*, 161 B.R. 595, 599 (D.N.J. 1993); *In re 266 Washington Associates*, 141 B.R. 275, 281 (Bankr. E.D.N.Y. 1992), *aff'd* 147 B.R. 827 (E.D.N.Y. 1992); *In re Mullock,* 404 B.R. 800, 805-06 (Bankr. E.D. Pa. 2009).

    As this case stands there is not a plan before the Court which has a reasonable chance of being confirmed within a reasonable time over Fannie Mae's objection.  The Debtor's Amended Plan places Fannie Mae's unsecured claim in the same class as the Debtor's other undisputed unsecured claims, which in the aggregate are far less than the amount of Fannie Mae's unsecured claim alone.  If Fannie Mae votes against the Amended Plan, as it now insists that it will, the Court will be obliged to deny confirmation.  The Debtor proposes to avoid such a result by obtaining the Court's blessing to separate Fannie Mae's unsecured claim into a separate class from the unsecured claims of ordinary trade creditors, as was approved by this Court in *In*

*re Krisch Realty Associates, L.P.,* 174 B.R. 914, 918-21 (Bankr. W.D. Va. 1994).  That decision dealt with a plan which expressly proposed such a separate classification.  In this case, however, the Debtor in its Amended Plan proposes to provide exactly the same treatment to all undisputed unsecured claims, including Fannie Mae's deficiency claim, in one class.  To permit it to change course at this stage when faced with Fannie Mae's Objection would be clearly for the purpose of obtaining an impaired class of creditors which might accept a non-consensual plan and permit it to be confirmed over Fannie Mae's objection.  The Fourth Circuit Court of Appeals, however, has expressed its strong disapproval of such a tactic, stating that "if the [claim] classifications are designed to manipulate class voting, . . . the plan cannot be confirmed."  *In re Bryson Properties, XVIII*, 961 F.2d 496, 502 (4th Cir. 1992).

Alternatively, the Debtor suggests that because all undisputed claims will under the Amended Plan be paid in full, none of such creditors is "truly impaired."  This argument ignores that even payment of the entire amount of a claim, but without interest, over some undetermined period of time as net revenues may be sufficient to make installment payments possible is less than the value, as of the effective date of the plan, of such claim being paid immediately, as, for example, the Code requires with respect to administrative expenses.  11 U.S.C. § 1129(a)(9)(A).  As pertinent to the circumstances presented in the present case, a claim is impaired unless the "plan – (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest[.]"  11 U.S.C. § 1124.  It in no way denigrates the treatment proposed by the Debtor for its unsecured obligations, which strikes the Court as quite reasonable and fair under the circumstances, to observe that it nevertheless alters the contractual rights otherwise incident to such claims and therefore impairs

them within the meaning of § 1124(1).

Fannie Mae has also stated that the Amended Plan, on its face, is not confirmable because the Debtor's ownership interest in the apartment complex and its other incidental property will remain in place despite the fact that creditors' claims are being impaired.  It is true that the Amended Plan, which only makes allowance for capital infusions on behalf of the Debtor without considering that some other party might wish to make such investment, is of a kind which the Fourth Circuit has held does violate the "absolute priority" rule.  *See* 11 U.S.C. § 1129(b)(2)(B)(ii); *In re Bryson Properties, XVIII,* 961 F.2d at 504-05; *In re Krisch Realty Associates L.P.*, 174 B.R. at 922.  While Fannie Mae has a point, it fails to note that such an objection has validity only so long as the senior classes are unwilling to accept the Amended Plan.  *See* 11 U.S.C. § 1129(b)(1).  Accordingly, absent some basis to deny the validity of Fannie Mae's voting of its claims, confirmation ultimately turns on whether it is willing to accept the Amended Plan or some negotiated modification of it.  Such a state of affairs would certainly justify the Court in terminating the automatic stay as to Fannie Mae at this time.  If the Court's only options were to continue in place the automatic stay without change or to terminate it, the Court would be obliged to terminate it.  As the Code expressly provides, however, and as other courts faced with motions for relief in somewhat similar situations have observed,[13] bankruptcy courts have several possible courses which they may take after determining that relief from the stay is either required or appropriate under the facts.  Specifically, the bankruptcy court "shall grant relief from the stay . . . , such as by terminating, conditioning, or limiting such stay[.]"  11

---

[13] See, *e.g.*, *In re Hope Plantation Group, LLC,* 393 B.R. at 104 (citing *In re Archway Apartments, Ltd.*, 206 B.R. at 465).

U.S.C. § 362(d).

The Court concludes that conditioning the continuation of the automatic stay is more appropriate than simply terminating it and will undertake to explain its rationale for so deciding. While confirmation may well be out of the Debtor's reach if Fannie Mae's assertion as to its future vote on the Amended Plan is accepted as inevitable, the Court simply recognizes the reality of Chapter 11 reorganization practice when it observes that parties which may be at loggerheads for weeks or even months frequently manage to bridge their differences, oftentimes at the eleventh hour, and end up announcing to the court that they have resolved their differences. While the Court cannot say that it necessarily expects that to occur in this case, neither does it rule out such possibility as being only a remote one. In this case the Debtor is proposing to pay over time all of the allowed unsecured claims in full as well as the allowed secured claim in full with interest. Such proposal may or may not be ultimately determined to be feasible, but at this point its feasibility has not been challenged by Fannie Mae. When faced with the reality that its deficiency claim, expected to exceed $500,000, will be rendered valueless by the failure of this case, Fannie Mae may decide that it ought to reconsider its opposition to the Debtor's efforts to reorganize. While conditioning the continuance of the stay will delay Fannie Mae in the attainment of its objective to gain control of the property as contrasted with immediate termination of such stay, no contention has been made that the value of the collateral is imperiled by the Debtor's continued management of it. Finally, the Court believes that it is appropriate under the circumstances presented in this case to consider the interests of the Debtor's other creditors, which will be left completely in the cold if the stay is terminated. As long as it is not truly prejudicial to the mortgagee, the Debtor ought to be accorded every

reasonable opportunity, consistent with applicable law, to reorganize its business not just for its benefit but to the advantage of the general interests of the creditors as a whole.  That appears to provide the only hope for any recovery by the trade creditors, which have no conflicting interests in voting their interests as unsecured creditors.  On the other hand, it would ignore obvious reality not to recognize that Fannie Mae's decisions with respect to the voting of its unsecured claim will almost certainly be influenced by its interests as it sees them as the secured creditor not only of the Debtor's apartment complex but also of the adjoining and complementary Shenandoah complex.

For these reasons the Court will enter an order granting relief to Fannie Mae in the form of conditioning the continuation of the automatic stay upon the Debtor's ability to obtain confirmation of its Amended Plan by July 15, 2010.

DECIDED this 28th day of May, 2010.

*[signature: William F. Stone, Jr.]*

UNITED STATES BANKRUPTCY JUDGE