IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| VILLAGE IN ROANOKE, L.P., | ) | CASE NO. 09-72431 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM DECISION ON OBJECTION TO DISCLOSURE STATEMENT

The matter before the Court is the Debtor's First Amended Disclosure Statement (the "Amended Disclosure Statement") filed March 4, 2010, which was responded to by the United States Trustee on April 2, 2010 and objected to by creditor Federal National Mortgage Association ("Fannie Mae") on April 7, 2010 (the "Objection"). Following a hearing held April 14, 2010, at which time the Court also heard argument regarding Fannie Mae's Motion for Relief from Automatic Stay ("Motion"), the Court took the Debtor's Amended Disclosure Statement and Fannie Mae's Motion under advisement. For the reasons that follow the Court will require the Debtor to supplement such Amended Disclosure Statement to the extent set forth herein.

## FINDINGS OF FACT

The Court incorporates its findings of fact as set forth in the contemporaneously filed Memorandum Decision (Doc. No. 95) regarding Fannie Mae's Motion requesting relief from the automatic stay. The Court further finds as follows: As previously noted, the United States Trustee responded to the Debtor's Amended Disclosure Statement on April 2, 2010. In this response counsel for the U.S. Trustee stated that there was no objection on behalf of the U.S. Trustee to the Debtor's Amended Disclosure Statement or the Debtor's Second Amended Plan of

Reorganization (the "Amended Plan").[1]  Fannie Mae, on the other hand, raised four contentions in its Objection with respect to the Debtor's Amended Disclosure Statement and Amended Plan.

Fannie Mae first contends that the Amended Plan fails to properly classify claims under §§ 1122, 1123(a)(1), and 1129(a)(1) of the Bankruptcy Code.  Fannie Mae contends that the proposed classification of equity security holders is a class of interests rather than claims and as such, they are classified incorrectly.  Fannie Mae also contends that the separation of unsecured claims based on a dispute concerning claim validity is not proper grounds for separate classification.  Fannie Mae cites *In re Paolini*, 312 B.R. 295, 314 (Bankr. E.D. Va. 2004) for this proposition.

Fannie Mae's second contention is that while the Debtor represents in its Amended Plan and Amended Disclosure Statement that there are four classes of impaired claims entitled to vote, there are in fact no classes entitled to vote that will accept, thus failing § 1129(a)(10)'s requirement that an impaired class of claims assent to its treatment in a non-consensual plan of reorganization.  Fannie Mae states in its Objection that it will not vote to accept as a secured claimant in class two, which class it wholly controls.  Similarly, Fannie Mae states that it will not vote to accept as an unsecured claimant in a class of unsecured claims, which its large unsecured deficiency claim would control in the Amended Plan.  Furthermore, Fannie Mae contends that if a separate classification of disputed unsecured claims is allowed, said class is deemed to reject based on the fact that the Amended Plan proposes no payment

---

[1] As referenced in the Court's decision on Fannie Mae's Motion, the Debtor docketed a first amended plan on February 23, 2010 and subsequently docketed a second amended plan a short time later on March 4, 2010.  For purposes of this decision "Amended Plan" refers to the plan docketed on March 4, 2010.

whatsoever for said claimants. (Objection at 8 (citing 11 U.S.C. § 1126(g)).) Finally, Fannie Mae contends that § 1129(a)(10) prohibits inclusion of class five claimants for purposes of voting because such class is comprised entirely of insiders.

Fannie Mae's third contention is that the Amended Plan fails to comply with § 1129(b)(2)(B)(ii) of the Bankruptcy Code. Because the Code prohibits equity security holders or insiders from receiving or retaining property under a non-consensual plan of reorganization and the Debtor proposes in class five that such claimants retain their interests in a reorganized entity, the Amended Plan fails to satisfy 1129(b)(2)(B)(ii)'s provisions. Furthermore, Fannie Mae asserts that to the extent the Amended Plan and proposed retention of property by insiders is premised on a "new value exception" because of the proposed capital cash infusion, the Fourth Circuit in *In re Bryson Properties, XVIII*, 961 F.2d 496, 505 (4th Cir. 1992) expressly questioned such exception's existence.

Although Fannie Mae concedes that its first three contentions are directed at the Amended Plan itself, it cites *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D.Va. 1986) for the proposition that when a disclosure statement relates to a Chapter 11 plan that is non-confirmable on its face, the disclosure statement should be denied to spare the estate the expense of soliciting votes and seeking confirmation of a non-confirmable plan. With respect to the Amended Disclosure Statement itself, Fannie Mae's fourth contention in its Objection is that the Amended Disclosure Statement fails to provide adequate disclosure as required under § 1125 of the Code as set forth below:

> 1. . . . The Amended Disclosure Statement does not explain . . . what amount of the capital cash infusion each entity will make and the financial condition of the entities making the capital cash infusion. The Amended Disclosure Statement does not adequately describe

whether the entire capital cash infusion . . . will be used to upgrade vacant units, or whether a portion of the capital cash infusion will be used to pay administrative expenses.

2. . . . The Amended Disclosure Statement . . . does not sufficiently identify the owners of the Reorganized Debtor, the extent of their ownership interests, and their financial condition, or whether the capital infusion . . . is to be treated as debt or equity by any Reorganized Debtor.

3. . . . The Amended Disclosure Statement provides that administrative expense claimants for expenses arising in the ordinary course of business after the Petition Date are identified in Exhibit C to the Second Amended Plan; Exhibit C, however, is the Monthly Projections for the Debtor, and does not provide the identity of these administrative expense claimants.  Further, the Amended Disclosure Statement does not specify the approximate amount to be paid to each administrative expense claimant.

4. . . . The Amended Disclosure Statement does not clearly identify which equity security holders hold claims of 'unsecured debt claims' and the amount of claim for each equity security holder. . . . The equity security holders did not file proofs of claim, and the Debtor did not schedule the claims of any equity security holder.

5. . . . The Amended Disclosure Statement only provides projections through September 2010, so creditors are unable to evaluate whether the Debtor indeed is likely to be able to pay claims in accordance with the Plan.  In addition, the Amended Disclosure Statement does not include adequate information with respect to the Debtor's projected versus actual performance during the two to three years prior to the Petition Date or the Post-Petition period, which could be compared with any Post-Confirmation projections.

6. . . . The Amended Disclosure Statement does not clearly and concisely explain the extent to which the Debtor will share in the costs of upkeep and maintenance of facilities common to the Debtor and . . . Shenandoah, L.P. . . .Post-Confirmation.  The Amended Disclosure Statement does not adequately explain the ownership of these facilities or provide a copy of the Grant of Easements Agreement, or offer to make a copy available, that describes the ownership of the facilities common to the Debtor and Shenandoah.

> 7. . . . The Amended Disclosure Statement provides that litigation is being contemplated by the Debtor against previous tenants for the collection of rent and against the previous management company. . . . The Amended Disclosure Statement does not adequately identify the possible defendants, the grounds upon which the Debtor could pursue litigation, the likelihood of any potential recovery, and the estimated amount of any potential recovery from each individual defendant.
>
> 8. . . . Any projections regarding the future of the Debtor's business, and any payments to creditors and interested parties under the Plan, are premised, at least in part, on the continued security of the property. The Amended Disclosure Statement does not adequately explain how local police officers are now able to provide a safe and secure environment and the costs associated with employing a third-party security company post-confirmation, if it becomes necessary to do so.
>
> 9. . . . The Amended Disclosure Statement does not clearly and concisely explain how the Debtor inquired and investigated whether any potential avoidance actions existed.

(Federal National Mortgage Association's Objection to Debtor's First Amended Disclosure Statement at 12-14.) Based on its Objection and the four contentions raised therein, Fannie Mae seeks the Court's disapproval of the Debtor's Amended Disclosure Statement.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The Court's consideration of the Debtor's Amended Disclosure Statement is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Court incorporates by reference the conclusions of law contained in its contemporaneous decision upon Fannie Mae's Motion.

The Debtor, by counsel, conceded at the April 14 hearing that the equity owners

or members of the Debtor are insiders and are not entitled to vote on the Amended Plan, so this issue is not one in actual dispute. Although the Court is satisfied that the Debtor's creation of a separate class of disputed unsecured claims was not motivated by any intention to try and gerrymander class voting and that indeed its intent was most likely to make clear to these creditors that their claims were objected to and would not be paid unless their claims were allowed by the Court over the Debtor's objection, it concludes on the basis of the *Paolini* decision previously cited by Fannie Mae that it is not appropriate to establish a separate class of claims premised solely on the Debtor's objection to their receiving any payment. Accordingly, the Objection will be sustained on this ground. The result is that classes 3A and 4 will be combined and the determination of what claims will be disallowed will be left to the normal claims allowance procedures.

The Court concludes that Fannie Mae's contention that it will vote against the confirmation of the Amended Plan is not a sufficient ground for the Court to deny approval of the Amended Disclosure Statement for such plan. While the Court recognizes that if there is no reasonable prospect that a plan can be confirmed, it may withhold approval of a disclosure statement and end the reorganization process at such time, it is not convinced that such is the case here. For the reasons noted in its separate decision, it has concluded that simply the assertion in Fannie Mae's pleadings and arguments that it will oppose the Debtor's Amended Plan does not persuade the Court that such result is inevitable in a case in which the Debtor is proposing to pay all allowed unsecured claims in full over time, albeit without interest, when it is clear that a Chapter 7 liquidation of the Debtor will result in no distribution whatsoever with respect to such claims.

The contention that the Amended Plan violates the "absolute priority" rule has been dealt with in this Court's separate decision on the Motion and will not be repeated here. As noted there, the question ultimately comes down to Fannie Mae's vote on the Amended Plan and there is no reason to deny approval of the Amended Disclosure Statement on the basis of any issue which will not be relevant if all impaired classes entitled to vote approve the Amended Plan.

In the interest of obtaining a reasonably expeditious resolution of this case, the Court will forego a leisurely review of all the complaints Fannie Mae has made to the adequacy of the information contained in the Amended Disclosure Statement. Instead it will require the Amended Disclosure Statement to be supplemented in the following respects:

1. Classes 3A and 4 are to be combined into class without prejudice to the Debtor's right to file an objection to any claim filed to which it objects.

2. The assumptions are to be based upon a confirmation hearing upon the Amended Plan on July 12, 2010.

3. Projections will be provided to creditors of the Debtor's financial performance and payments upon both secured and unsecured claims for the twenty four month period following plan confirmation.

4. The value of the secured claim and the monthly payments thereon will be based on the stipulated valuation of $1 million and the amount of Fannie Mae's unsecured claim will be reduced accordingly.

5. Based on the Debtor's projections of its post-confirmation financial performance the holders of unsecured allowed claims will be advised clearly and succinctly over what period of

time they might reasonably expect to receive the distributions promised to them under the terms of the Amended Plan.

      6. Exhibit C will be revised to reflect the identity and estimated amounts of the administrative claimants to be paid in full by the Debtor's principals upon confirmation.

      To the extent that such requirements do not address all of the issues raised by Fannie Mae in its Objection, the Court concludes that the information in question is already provided in the Amended Disclosure Statement or is not necessary for creditors to have adequate information to make a judgment as to whether to support or reject the Amended Plan. An order in accordance with the provisions of this Memorandum Decision will be entered contemporaneously herewith.

      DECIDED this 28th day of May, 2010.

*/s/ William F. Stone, Jr.*

_____

UNITED STATES BANKRUPTCY JUDGE